IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION AT MEMPHIS

| | |
|---|---|
| JALETA CLARK, SONNY WEBBER, ALOREA HARDWICK, AND ERNESTINE LEWIS,<br><br>    *Plaintiffs*,<br><br>v.<br><br>RICHARD WILLIAM CASTLE, MATTHEW RICHMOND DAVIS, MICHAEL SHANE DULANEY, CHARLES FORCE, WILLIAM WILSON, AND OTHER UNKNOWN PERSONS INDIVIDUALLY,<br><br>    *Defendants*. | Case No.<br>**JURY DEMANDED** |

**COMPLAINT FOR THE WRONGFUL SLAYING OF BRANDON WEBBER, SR.**

THE PLAINTIFFS, Jaleta Clark as the natural mother of the deceased Brandon Webber, Sr. (the "Victim"); Sonny Webber as the Victim's natural father; Alorea Hardwick as the mother and next of kin of the minor children Brandon Webber, Jr., and Ariel Webber, the natural and biological children of the decedent Brandon Webber, Sr. (the "Victim"); and Ernestine Lewis as the mother and next of kin of the minor child Khaleyah Dior Webber, the natural and biological daughter of the Victim, for their causes of action state the following:

# I.

## NATURE OF THE ACTION

1. This case concerns the brazen and unlawful killing of a young black man named Brandon Webber, Sr., by the Defendants purporting to be agents, officers, or deputies of United States Marshals Service (the "Shooters" or "Defendants"). On the evening of June 12, 2019, the Shooters, in plain clothes, bearing no law-enforcement insignia, and driving large, unmarked SUVs, swarmed upon the Victim, and without warning or notice, shot him to death in his mother's driveway.

2. The mother, father, and guardians of the natural children of the Victim bring this action against the Defendants, each in his individual capacity, for recovery of monetary damages for the willful violation, under color of law, of the Victim's rights as guaranteed by the Fourth and Fifth Amendments to the United States Constitution.

3. In addition, Plaintiffs plead causes of action for injuries and wrongful death resulting from the battery, assault, negligent infliction of emotional distress, and other tortious acts or omissions committed by the Shooters. They also plead any and all causes of action and assert any and all claims to which they may be entitled under Tennessee's wrongful-death statutes, Tenn. Code Ann. §§ 20-5-106–108, 111, 113

## II.

## JURISDICTION & VENUE

4. This Court has jurisdiction under 28 U.S.C. § 1331 to hear Plaintiffs' claims sounding under the Fourth and Fifth Amendments and *Bivens v. Six Unkown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971) and its progeny.

5. This Court has supplemental jurisdiction under 28 U.S.C. §1367to hear all pertinent state-law claims arising out of the events herein below described.

6. The United States Western District of Tennessee provides proper venue for this action because it is the territorial jurisdiction within which all or a substantial part of the events giving rise to Plaintiffs' claims occurred.

## III.

## PARTIES

7. Plaintiffs:

    (a) Jaleta Clark is an adult resident of Shelby County, a United States citizen, and the natural mother of the Victim. She brings this action individually and as the surviving mother and personal representative of the Victim's estate.

    (b) Sonny Webber is an adult resident of Shelby County, a United States citizen, and the natural father of the Victim. He brings this action individually and as the surviving father and personal representative of the Victim's estate.

    (c) Alorea Hardwick is a resident of Shelby County, Tennessee, and a citizen of the United States. Ms. Hardwick is the mother and next of kin of Brandon Webber, Jr., who is a minor child and the natural and biological son of the Victim, and of Ariel Webber, who is a minor child and the natural and biological daughter of the

3

Victim. Ms. Hardwick brings this action as guardian and on behalf of, and for the benefit of Brandon Webber, Jr., and Ariel Webber, minors.

(d) Ernestine Lewis is a resident of Shelby County, Tennessee, and citizen of the United States. Ms. Lewis is the mother and next of kin of Kaleyah Dior Webber, who is a minor child and the natural and biological daughter of the Victim. Ms. Lewis brings this action as guardian and on behalf of, and for the benefit of, Kaleyah Dior Webber, a minor.

8. Defendants:

(a) Upon information and belief, each of the Shooters was at all pertinent times either a United States Marshal, an employee of the United States Marshals Service, or a local or state law-enforcement officer deputized by the United States Marshals Service, purporting to act in the service of the United States Marshals Service's Gulf Coast Regional Fugitive Task Force (the "Task Force") Each Defendant is sued in his individual capacity

(b) Upon information and belief, Defendant Richard William Castle was at all pertinent times a United States Marshal or other employee of the United States Marshals Service. Purporting to act as a member of the Task Force on June 12, 2019, Castle unlawfully shot his firearm at the Victim, then roughly handled and refused emergency care to the Victim once wounded, resulting in the Victim's death.

(c) Upon information and belief, Defendant Matthew Richmond Davis was at all pertinent times a police officer for the city of Oxford, Mississippi. Purporting to act as a member of the Task Force on June 12, 2019, Davis unlawfully shot his firearm at the Victim, then roughly handled and refused emergency care to the Victim once wounded, resulting in the Victim's death.

(d) Upon information and belief, Defendant Michael Shane Dulaney was at all pertinent times a member of the United States National Guard. Purporting to act as a member of the Task Force on June 12, 2019, Dulaney unlawfully shot his firearm at the Victim, then roughly handled and refused emergency care to the Victim once wounded, resulting in the Victim's death.

(e) Upon information and belief, Defendant Charles Force was at all pertinent times a United States Marshal, or an employee of the United States Marshals Service, or a state or local law-enforcement

officer. Purporting to act as a member of the Task Force on June 12, 2019, Force unlawfully shot his firearm at the Victim, then roughly handled and refused emergency care to the Victim once wounded, resulting in the Victim's death.

(f) Upon information and belief, Defendant William Wilson was at all pertinent times a United States Marshal, or an employee of the United States Marshals Service, or a state or local law-enforcement officer. Purporting to act as a member of the Task Force on June 12, 2019, Wilson unlawfully shot his firearm at the Victim, then roughly handled and refused emergency care to the Victim once wounded, resulting in the Victim's death.

(g) Upon information and belief, each Defendant, John Does 1–10, was at all pertinent times a United States Marshal, an employee of the United States Marshals Service, or a state or local law-enforcement officer.[1] Purporting to act as a member of the Task Force on June 12, 2019, each John Doe unlawfully shot his firearm at the Victim, roughly handled and refused emergency care to the Victim once wounded, failed to intervene as he witnessed others do the same, or some combination thereof, resulting in the Victim's death.

## IV.

## DEMAND FOR JURY

9. Plaintiffs respectfully demand that a jury be empaneled to hear and decide all and any of their claims that may be submitted to a jury.

## V.

## ALLEGATIONS OF FACT

10. In the early evening on June 12, 2020, the Victim sat parked on the gravel portion of his mother, Plaintiff Clark's, driveway, in front of her house located on Durham Avenue in Memphis, Tennessee.

---

[1] The use of "John Doe" or the masculine pronoun for unknown-named Task Force members is not intended here to be gender specific. Indeed, Plaintiffs believe one or more of the Shooters on scene were female.

11.     The Victim sat in the driver's seat of a small car (the "Coupe"), waiving to neighbors as the engine idled.  A small child played in the front yard next door.  Plaintiff Clark then left the house for a quick trip to the store.

12.     Moments later, three unmarked SUVs raced down Durham Avenue without siren or announcement.  One or more of these unmarked vehicles sped over neighboring front lawns, nearly crushing the little girl next door, and rammed into the Coupe.

13.     Upon information and belief, the impact from one or more of the unmarked SUV's disabled and immobilized the Coupe, boxing the Victim into a corner of the driveway.

14.     According to multiple eyewitness accounts, immediately after ramming the Coupe's front and driver's side, the Shooters, who wore no uniforms or insignia to identify them as law enforcement, jumped out of the vehicle and, with no verbal warning, identification, or other reasonable notice, shot the Victim multiple times using high-powered rifles.

15.     The Victim was riddled with fifteen or more rounds, piercing him at least eighteen times.  Upon information and belief, these were high-velocity rifle rounds that inflicted massive trauma and hemorrhaging in the Victim.

16.     Just prior to the shooting, the Victim was visible and not hiding.  He was not threatening anyone.  No neighbors saw him brandish or attempt to draw any weapon at any point.

17. Upon information and belief, the Shooters fired on the Victim as he sat peacefully in the car—before he had any time to peacefully surrender.

18. Certain wound trajectories from the Medical Examiner's Report suggest the Victim received some of his wounds while his hands were extended in front of him, palms facing out in a gesture of surrender. Other wound paths show that certain bullets passed along a dorsal to ventral, upwards trajectory through the Victim's legs. These wounds indicate that some, if not indeed all, of the rounds shot at the Victim struck him while he was posing no credible threat to the Shooters.

19. Upon information and belief, when the shooting stopped, the Victim lay across the center console and passenger seat of the Coupe, full of gunshot wounds. Eyewitnesses saw the Shooters then yank his limp body through the passenger-side window, slam him to the ground, then stand around to watch him die.

20. The Shooters withheld emergency first aid as the Victim lay bleeding at their feet. This was notwithstanding the fact, averred on information and belief, that Defendant Castle was and is a part-time paramedic who at one time held a valid medical license.

21. Upon information and belief, the Shooters did not call for an ambulance until they were sure the Victim had bled out. Two autopsy reports indicate that someone at some point tried to handcuff the Victim's lifeless wrists.

22. Plaintiff Clark soon returned from the store to the macabre scene in her driveway: her oldest son shot dead, lying in a pool of his own blood at the feet of unidentified, heavily armed men.

## VI. FEDERAL CAUSES OF ACTION

23. The facts and allegations in paragraphs 1–22 are hereby reiterated and incorporated by reference as if fully set forth hereunder.

24. At the time the Shooters shot the Victim, neither the Shooters nor anyone else were in danger of fatal or serious bodily harm from the Victim.

25. At the time the Shooters yanked the wounded Victim from the car, slammed him to the ground, then withheld emergency care while he bled to death, neither the Shooters nor anyone else were in danger of fatal or serious bodily harm from the Victim.

26. In fatally shooting the Victim, the Shooters acted intentionally and used unreasonable and excessive force for the purpose of causing injury or death, without legal justification, to the Victim.

27. In yanking the wounded Victim from the car, slamming him to the ground, and withholding emergency care, the Shooters acted intentionally, maliciously, and used unreasonable and excessive force for the purpose of causing injury or death to the Victim without legal justification.

28. Fatally shooting the victim was unnecessary to achieve any legitimate law-enforcement objective.

29. Yanking the Victim's wounded body from the car, slamming him to the ground, and denying him emergency care while he bled out were unnecessary to achieve any legitimate law-enforcement objective.

30. The Shooters' actions, intended to inflict gratuitous suffering on the Victim, were grossly excessive, shocking to the conscience, and revealing of a profound indifference to the value of human life.

31. By killing the Victim in his mother's driveway, the Shooters deprived him of his day in court for the fair and impartial adjudication of any criminal allegations he may have been facing prior to his death.

32. The Shooters' actions thus violated the Victim's Fourth Amendment right to be free from unreasonable search or seizure, and the Victim's Fifth Amendment substantive and procedural due-process rights.

33. The constitutional violations cited under this count caused the Victim grievous injury, extreme pain and suffering, and death.

34. By causing the Victim's untimely and wrongful death, these violations also caused grievous psychological and financial injury to the Plaintiffs.

## VII. PENDANT CAUSES OF ACTION

35. The facts and allegations set forth in paragraphs 1–34 are hereby reiterated and incorporated by reference as if fully set forth hereunder.

36. The acts and omissions hereinbefore alleged deprived the Victim of certain rights guaranteed to him by the Tennessee Constitution.

37.     The Shooters' acts and omissions hereinbefore alleged constituted common-law battery; assault; conspiracy; deliberate, wanton indifference to the value of human life; injurious recklessness; and injurious gross negligence.

38.     The Shooters' conduct cited under this count caused the Victim grievous injury, extreme pain and suffering, and death.

39.     The Victim's untimely and wrongful death caused psychological and financial injury to the Plaintiffs.

## VIII.   TENNESSEE WRONGFUL DEATH CLAIMS

40.     Plaintiffs also plead causes of action and assert claims under the Tennessee's wrongful death statutes, Tenn. Code Ann. §§ 20-5-106–108, 111 113, to whatever extent such causes and claims may be applicable, for the injuries sustained by the Victim from the time of injury to the time of death—including but not limited to physical and mental pain and suffering, funeral expenses, lost wages, and loss of earning capacity—and also the damages resulting to the these Plaintiffs for whose use and benefit the right of action survives from the death of their father consequent upon the injuries received, including but not limited to the pecuniary value of the Victim's life and the loss of his companionship.

## IX.   RELIEF SOUGHT

41.     WHEREFORE, Plaintiffs respectfully demand the following relief:

    A.     That process issue and Defendants be required to fully answer or respond to this Complaint within the time and manner provided by law;

    B.     That a jury be empaneled to hear and decide the merits of all jury-triable issues set forth or fairly raised herein;

C. That upon a trial, Plaintiffs be awarded money damages in an amount to be determined according to the proof, but in no event less than TWENTY-FIVE MILLION DOLLARS ($25,000,000);

D. That in addition to damages, Plaintiffs be awarded any and all costs, expenses, and reasonable attorney fees available by law; and

E. For such other and further relief as the Court may deem just and proper under the circumstances.

§　　　§　　　§

Dated June 12, 2020.

Respectfully submitted,
**APPERSON CRUMP PLC,**

/s/ *Jacob Webster Brown*
Jacob Webster Brown (TN 36404)
Bruce S. Kramer (7472)
6000 Poplar Avenue, Suite 150
Memphis, Tennessee 38119
Telephone:  (901) 756-6300
Facsimile:   (901) 757-1296
jbrown@appersoncrump.com
bkramer@appersoncrump.com
*Attorneys for Plaintiffs*

11